AO 91 (Rev. 11/11)  Criminal Complaint

DOA
03/27/24

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Dora Rochin-Barraza | ) | Case No.    25-9167 MJ |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____September 23, 2024____ in the county of ____Maricopa____ in the

____ District of ____Arizona____ , the defendant(s) violated:

| _Code Section_ | _Offense Description_ |
|---|---|
| 31 U.S.C. § 5324(a)(3) | Structuring Financial Transactions |

This criminal complaint is based on these facts:

See attached affidavit of SA Jawan C. Little.

☑ Continued on the attached sheet.

Digitally signed by
MARGARET PERLMETER
Date: 2025.03.28 09:54:45
-07'00'

Reviewed by AUSA Margaret Perlmeter

JAWAN C LITTLE  Digitally signed by JAWAN C LITTLE
Date: 2025.03.28 09:45:25 -07'00'

_Complainant's signature_

HSI SA Jawan C. LIttle

_Printed name and title_

Sworn to telephonically and signed electronically.

Date:  ____3/28/2025@11:25am____

_Judge's signature_

City and state:  ____Phoenix, Arizona____ ____U.S. Magistrate Judge Eileen S. Willett____

_Printed name and title_

## STATEMENT OF PROBABLE CAUSE

I, Jawan C. Little, Special Agent with the Homeland Security Investigations, Phoenix, Arizona, being duly sworn, hereby depose and state:

## BACKGROUND OF AFFIANT

1. Your Affiant is a Special Agent with Homeland Security Investigations (HSI) and have been since May 2021. Your Affiant is currently assigned to the HSI Deputy Special Agent in Charge Office of Phoenix, Arizona as a criminal investigator. My responsibilities include investigating violations of money laundering, controlled substances, immigration, customs violations and various other offenses enumerated in Title 18, and Title 31 of the United States Code. Your Affiant is also cross designated with the Drug Enforcement Administration and has authority to conduct investigations and to make arrests for offenses enumerated in Title 21 of the United States Code. In June 2024, your Affiant was assigned to the HSI Phoenix El Dorado Task Force – Illicit Finance and Sanctions Unit. The El Dorado Task Force is a HSI national initiative, charged with investigating any persons, groups, and/or entities that seek to knowingly abuse the financial institutions and systems of the United States.

2. Your Affiant graduated from the Criminal Investigator Training Program and the HSI Special Agent Training Course, located at the Federal Law Enforcement Training Center in Glynn County, Georgia. At this institution, your Affiant received specialized training in the following areas, among others: firearms, defensive tactics, surveillance, undercover operations, and conducting investigations relating to money laundering, illegal drugs, immigration, fraud, cybercrime, import/export violations, and child exploitation.

3. In 2011, your Affiant earned a bachelor's degree from the University of Arizona, double majoring in Economics and Political Science. Your Affiant holds a professional certification as a Certified Anti-Money Laundering Specialist (CAMS). Prior to my employment with HSI, your Affiant was a Financial Auditor with the Arizona

Attorney General's Office (AGO) for over five years. During this entire period, your Affiant was assigned to the Transaction Record Analysis Center (TRAC) within the Arizona Financial Crimes Task Force to assist in criminal money laundering investigations and financial-related crimes.

4. When your Affiant was at TRAC, your Affiant assisted law enforcement agencies in analyzing transactional records from Money Service Businesses (MSBs) in money laundering investigations. In doing so, your Affiant became familiar with the techniques and methodologies utilized by criminals and criminal enterprises to conceal transactions involving their ill-gotten gains. This includes activities where MSB contracted agents, or their operators are believed to be fabricating customer information in order to structure transactions to avoid the federal reporting requirements and to conceal the true identity of the owner of the funds.

5. By virtue of my investigative experience, your Affiant has personally interviewed informants and/or people involved in laundering illicit proceeds through MSBs and has read official reports of similar interviews by other law enforcement officers. Your Affiant has participated in surveillance operations, observing and recording movements of people laundering illicit proceeds through MSBs. Your Affiant has reviewed the bank accounts of known money launderers and analyzed large sums of banking and MSB data to generate official reports. Your Affiant has participated in court-ordered wiretaps to gather evidence and information concerning money laundering organizations (MLOs) working in concert with drug trafficking organizations (DTOs). Your Affiant has become familiar with the communication methods used by MLOs, which include, but are not limited to, the use of the internet, computers, cellular phones, and other communication devices that they use to communicate about money laundering.

6. The statements contained in this Affidavit are based on information derived from my personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or

indirectly through their reports or affidavits; analysis of financial records; surveillance conducted by law enforcement officers; analysis of public records; and analysis of open-source information.

7.     Your Affiant submits there is probable cause to find that DORA ROCHIN-BARRAZA (ROCHIN) committed the offense of Structuring Financial Transactions, in violation of Title 31, United States Code § 5324(a)(3).

8.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.  Your Affiant has set forth only the facts believed to be necessary to establish probable cause in support of a criminal complaint for DORA ROCHIN-BARRAZA.

## INTRODUCTION TO THE INVESTIGATION AND MONEY SERVICE BUSINESSES (MSBs)

9.     A Money Service Business (MSB) is defined by the Financial Crimes Enforcement Network (FinCEN) to include any person doing business, whether or not on a regular basis or as an organized business, in one or more of the following capacities: (1) Currency dealer or exchanger; (2) Check casher; (3) Issuer of traveler's checks, money orders or stored value; (4) Seller or redeemer of traveler's checks, money orders or stored value; (5) Money transmitter; and (6) U.S. Postal Service.  Simply put, a MSB is a non-bank financial institution that allows its customers to transmit, convert, or exchange money without the requirement of opening an account.  MSBs generally have less stringent requirements for utilizing their services, making them more accessible to individuals without a traditional banking history, insufficient documentation, or a preference for anonymity. Examples of commonly known MSBs are Western Union and MoneyGram; however, there are numerous companies which offer the services of money transfers both domestically and internationally from Arizona.

10. Through my training and experience, your Affiant is familiar with the common money transfer payment systems utilized by corporate MSBs and their contracted agents throughout the United States. First, a sender (customer) enters an authorized MSB agent location to initiate a money transfer. The MSB agent is an individual or business that acts on behalf of a licensed MSB to provide financial services, such as money transfers. Next, the money transfer customer deals directly with a person at the MSB agent location who is logged into the host MSB computer system, or the customer uses the red telephone at the sending agent location to speak directly with an operator who works for the corporate MSB. The result is the same - either the cashier at the MSB agent location enters the information provided by the sender into a computer linked to the corporate MSB, or the actual sender offers the required information to a remote operator over a telephone connection. Information concerning the customer is entered. After the information is collected and entered, the customer provides money for the transaction, which includes the principal amount of money for the transfer and the transaction fee the MSB agent charges. The customer is then supposed to be provided a receipt containing the provided information, plus the date and time the transfer was sent, and a unique transaction number, sometimes called an MTCN (Money Transfer Control Number).

11. Due to the potential of criminal exploitation and risk-mitigation efforts, corporate MSBs have implemented systems to quickly detect suspicious transaction activity. Corporate MSBs utilize automated surveillance software systems through which all sent money transfers are funneled and scanned. For example, corporate MSBs, to curtail illegal money laundering activities, employ controls that identify and block transactions showing repetitive sending or payee names involving larger than average amounts of money. Sending family maintenance transfers[1], which are predominantly in

---

[1]. Family remittances generally refer to money transfers from someone, commonly migrant workers, in the United States to family or close friends in their home country.

amounts less than $500, is a large segment of the MSB business.[2]  Under the Bank Secrecy Act, MSBs must obtain and record specific information for each money transfer of $3,000 or more (31 CFR §1010.410), including verifying the customer's identity.  However, to mitigate money laundering activities, corporate MSBs oftentimes impose identification requirement thresholds for transactions having an amount less than $3,000.  From training and experience, your Affiant has learned that corporate MSBs oftentimes set their identification threshold at $1,000, but this amount can be adjusted upwards or downwards for a particular geographic area or for a particular agent.  Consequently, numerous transactions at a particular agent location that are greater than the general family remittance amount but less than $1,000 raise suspicions that a customer, an MSB agent, or an employee of the agent may be intentionally attempting to avoid having to fulfill identification requirements.

12.    If the software identifies a particular transaction as potentially suspicious, the transaction is blocked, and the corporate MSB works to contact the sender to issue a refund.  Because the MSB business model eliminates the requirement of opening an account, if a sender or customer's transaction is blocked, corporate MSBs rely only on the information provided for the transaction to contact the customer to issue a refund.  The corporate MSBs rely upon their contracted agents to follow AML corporate policies, as well as state and federal laws and regulations; including, for example, requiring an ID if a transaction involves an amount $3,000 or greater (31 U.S.C. §5325) or filing a Currency Transaction Report if the transaction involves more than $10,000 (31 U.S.C. §5313).  Corporate MSBs are required by 31 CFR §1022.210(a) to maintain an effective anti-money laundering program which almost always includes educating their contracted

---

[2] The United Nations reported in 2023 that the average migrant worker family remittance is between $200 and $300 monthly. United Nations, "International Day of Family Remittances 16 June."
https://www.un.org/en/observances/remittances-day/background#:~:text=In%202023%2C%20international%20remittances%20to,are%20sent%20through%20digital%20channels.

agents by requiring them to undergo AML/BSA training for themselves and their employees.

13.    As this investigation has revealed, corporate MSBs are vulnerable to illegal activities initiated by MSB agents and employees – who are commonly referred to as "complicit agents" or "bad actors," who are actively and knowingly operating their MSBs to assist in evading corporate surveillance software and/or government regulations. Complicit agents have learned to circumvent corporate MSB controls and evade governmental regulation by using fabricated non-repetitive sender and payee names in an effort to conceal the identity of their actual customers, to avoid corporate controls, and circumvent the reporting requirements in violation of 31 U.S.C. §5324 (Structuring Financial Transactions).  "Structuring" refers to breaking up sums of money into smaller amounts to evade currency reporting requirements that are triggered at certain threshold amounts.

14.    Your Affiant has previously investigated MSBs for criminal violations. Through those investigations, your Affiant noticed certain patterns of activity that are indicative of, and suggest that a MSB may be structuring financial transactions.  These include:

a) Clustered transactions ("clusters") defined as four or more transactions conducted on the same day that list the same payee state (for example, Sinoloa),

b) Repeated, unusual transaction amounts conducted on the same day,

c) A high volume of transactions inconsistent with nearby comparable businesses,

d) Incomplete sender information or fabricated sender information, such as invalid or incomplete sender addresses and invalid telephone numbers, repeated use of the same sender names or surnames during a single day (especially within close time proximity), and repeated appearances of the

same sender address or an address slightly different from the previous transaction (for example, 122 Main Street, 123 Main Street, 124 Main Street),

e) "Tandem payee name groupings" or groupings of "tandem payee names," which is defined as the presence of two or more payee names that have also been observed on the same day at other suspicious MBSs,

f) The use of multiple corporate MSBs and/or suspiciously alternating between them.

## PROBABLE CAUSE

15.     According to Arizona Corporation Commission Records, Arizona Cellular & Accessories ("Arizona Cellular"), a domestic financial institution, located at 3538 West Glendale Avenue, Phoenix, Arizona, was formed in Maricopa County in August 2009 with Dora ROCHIN-Barraza as the sole principal.  Based upon a review of transaction records, ROCHIN was the listed send agent in over 56% of the transactions conducted at Arizona Cellular in 2024. There were three other send agents who collectively conducted approximately 28% of the transactions.  In 2024, Arizona Cellular conducted over 13,000 transactions totaling almost 12 million dollars.  In contrast, another MSB across the street, with similar operating hours, conducted only 106 transactions totaling approximately $105,000.  Arizona Cellular conducted clustered transactions to Sinaloa on 304 of the 308 days they were open in 2024 where the MSB across the street conducted none.  Similarly, the Wal-Mart approximately one mile from Arizona Cellular conducted four transactions per active day, totaling approximately $1.4 million dollars for the 2024 calendar year, and did not conduct any clustered transactions to Sinaloa[3].

---

[3] This Wal-Mart conducted clustered transactions over two days in 2024 and the payee states were Baja California Norte, Mexico, and the state of California.

16.     A review of Arizona Cellular's transaction records revealed the presence of the patterns of activity that suggest a MSB may be structuring financial transactions and engaging in criminal activity.  For example, on June 4, 2024, Arizona Cellular conducted 80 transactions totaling $71,190; 51 of these transactions showed the payee location as Sinaloa, Mexico.  Unusual and repeated transaction amounts were observed.  Specifically, there were four transactions of $870, three transactions of $860, two transactions of $590, two transactions of $790, two transactions of $805, two transactions of $875, two transactions of $880, and two transactions of $930.  The use of unusual, repeated amounts within a cluster of transactions is consistent with what has been observed at complicit agent locations that were engaged in breaking larger amounts of bulk cash into numerous fabricated transactions for the purpose of avoiding reporting requirements.

17.     Agents observed the use of fabricated customer addresses within the 80 transactions conducted on June 4.  For example, 13617 North 31st Drive, Phoenix is listed as the address for two transactions of $860 and 16 minutes later, 13618 North 31st Street, Phoenix is listed for an $860 transaction for a third individual. Records checks revealed that the address 13618 North 31st Street, Phoenix is not a valid address.  Additional records revealed the repeated use of house number 6589 with four separate street addresses within a five-hour time period: 6589 West Holly Street, 6589 West Northern Avenue, Apt 133, 6589 West Osborn Road, and 6589 West Puget Avenue.  While these addresses appear to be valid, your Affiant believes they are being generated through an autofill function, as it is highly unlikely that on one day, at one of over 1200 MSB locations in Arizona, that four individuals all with a house number of 6589 would enter Arizona Cellular to send a transaction over $500 to Sinaloa, Mexico.

18.     Agents also observed the groupings of tandem payee names or payee name crossover.  An examination of payee names used at Arizona Cellular were also found as payee names in previously identified complicit MSB locations.  While one payee name overlap may allow for an innocent explanation, the overlap of multiple payee names

strongly suggests the recycled use of payee name lists.  For example, payee names John Doe 1 and Jane Doe 2 appeared in tandem at Arizona Cellular in transactions to Sinaloa on May 10, 2024.  Doe 1 and Doe 2's names appeared as payees in tandem on multiple occasions in 2018 at a different complicit MSB that was under investigation.

19.     On February 21, 2025, the Honorable U.S. Magistrate Judge Deborah Fine authorized a search and seizure of Arizona Cellular & Accessories, located at 3538 West Glendale Avenue Phoenix, Arizona.

20.     On February 25, 2025, HSI Phoenix executed the warrant and seized various notebooks containing ledgers consistent with the use of payee name lists as well as electronic devices belonging to ROCHIN and one of her cashiers.

21.     Pursuant to the warrant, agents examined ROCHIN's mobile device and observed WhatsApp communications between ROCHIN and one of her cashiers.



Specifically, on September 23, 2024, ROCHIN directed her cashier to open the store, and to begin conducting transactions on behalf of "Kiki." ROCHIN stated that they are going to do "13 thousand today." The cashier responds with an apparent image of a payee name list, and asks, 'do I do these ones?" ROCHIN then confirms "yes." The payee name list in the image was labeled "Kiki" at the top.

22.     Agents reviewed the money transfer data conducted at Arizona Cellular on September 23, 2024, and observed fourteen individuals from the suspected payee name list each received individual transactions ranging from $820 - $855, totaling approximately $11,700. The payee state for all fourteen transactions was Sinaloa, Mexico. The sender names for all transactions were distinct from one another and none listed the name, "Kiki."  Agents checked a federal financial database, and did not locate a currency transaction report.



23.     Agents observed no less than two training certificates, bearing ROCHIN's name, indicating the successful completion of Bank Secrecy Act and Anti-Money Laundering training displayed within the establishment.   Thus, your Affiant believes ROCHIN is aware of the reporting requirements and that the actions she took and directed

her employee to take were intended to evade the reporting requirements of Title 31, United States Code §5313(a).

24.    Agents attempted to interview ROCHIN at the time of the warrant; however, she declined to make a statement.

25.    Based on the facts and circumstances set forth in this Affidavit, your Affiant submits that there is probable cause to believe that ROCHIN knowingly and willfully structured a currency transaction to evade the currency transaction reporting requirements of Title 31 United States Code §5313(a), all in violation of Title 31 United States Code Section §5324(a)(3).

JAWAN C LITTLE  Digitally signed by JAWAN C LITTLE
Date: 2025.03.28 09:48:53 -07'00

Jawan C. Little
Special Agent
Homeland Security Investigation

Subscribed electronically and sworn to telephonically on the 28th day of March, 2025.

HONORABLE EILEEN S. WILLETT
UNITED STATES MAGISTRATE JUDGE